Stanley A. RODOWICZ, James J. Lemon, Sigmund S. Ziemba, Barbara Binsky, Patricia A. Kennedy, Anne E. Buck, June DeVine, Margaret S. Stevens, Plaintiffs,

v.

MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY and Massachusetts Mutual Voluntary Termination Program, Defendants.

Civ. A. No. 93–30075–MAP.

United States District Court,
D. Massachusetts.

July 27, 1994.

Keith A. Minoff, John C. Sikorski, Robinson, Donovan, Madden & Barry, Springfield, MA, for plaintiffs.

David G. Cohen, Egan, Flanagan & Egan, Charles S. Cohen, Egan, Flanagan & Cohen, P.C., Springfield, MA, for defendants.

*MEMORANDUM REGARDING DEFENDANTS' MOTION TO DISMISS AND PLAINTIFFS' MOTION TO AMEND COMPLAINT*

(Docket Nos. 7 & 24)

PONSOR, District Judge.

## I. *INTRODUCTION*

The plaintiffs, former employees of defendant Massachusetts Mutual Life Insurance Company ("MassMutual"), retired between August 1 and October 1, 1992. All plaintiffs are recipients of retirement benefits paid by their former employer. Each now claims that his or her decision to retire during this two-month period was strongly influenced by the defendant's representation that MassMutual was not seriously considering, or in the near future planning to offer, an early-retirement incentive program that would afford retiring MassMutual employees enhanced benefits. On October 23, 1992, MassMutual announced an early retirement incentive plan, the Massachusetts Mutual Voluntary Termination Program (the "1992 Plan" or "Severance Plan"), effective immediately. Only those employees who retired *after* October 23 and before January 2, 1993, were eligible to receive the more valuable retirement benefits offered under this plan. But for their reliance on the defendants' misrepresentations, plaintiffs assert they would have been employed by the defendant on October 23, 1992 and thereby eligible for the more favorable benefits package.

Count I of the complaint alleges that the defendants, by their misrepresentations, breached the fiduciary duty owed to the plaintiffs in violation of section 1104(a) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 *et seq.* Count II alleges that the defendants discriminated against the plaintiffs as plan participants by interfering with the attainment of benefits to which they were entitled under the 1992 Plan, in violation of 29 U.S.C. § 1140. In the alternative, Count III alleges common law misrepresentation, through the defendants' failure to disclose to the plaintiffs the more generous 1992 Plan.

In their motion to dismiss, MassMutual and the Massachusetts Mutual Voluntary Termination Program offer three arguments. First, because plaintiffs are not "participants" in the 1992 Plan they have no standing to bring a claim before this court. Second, plaintiffs' misrepresentation claim is predicated on allegations of fraud which have not been pled with the level of particularity required by Fed.R.Civ.P. 9(b). Third, ERISA preempts all of plaintiffs' common law claims. For the reasons set forth below, the motion to dismiss will be allowed, in part. Plaintiffs have filed a motion to amend, which will also be allowed, in part.

## II. FED.R.CIV.P. 12(b)(6)

In deciding a motion to dismiss brought under Fed.R.Civ.P. 12(b)(6) a court must look only to the allegations of the complaint, and "if under any theory they are sufficient to state a cause of action in accordance with the law, a motion to dismiss the complaint must be denied." *Knight v. Mills,* 836 F.2d 659, 664 (1st Cir.1987) (citing *Melo–Tone Vending Inc. v. United States,* 666 F.2d 687, 688 (1st Cir.1981)); *accord Cuddy v. Boston,* 765 F.Supp. 775, 776 (D.Mass.1991). The appropriate inquiry on a motion to dismiss is whether the plaintiffs are entitled to offer evidence in support of their claims. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). For purposes of this motion, the court accepts as true all the factual allegations set forth in the complaint and draws all reasonable inferences in favor of the plaintiffs. *Bergeson v. Franchi,* 783 F.Supp. 713 (D.Mass.1992) (citing *Correa–Martinez v. Arrillaga–Belendez,* 903 F.2d 49, 52 (1st Cir.1990); *Dartmouth Review v. Dartmouth College,* 889 F.2d 13, 16 (1st Cir.1989).

## III. FACTUAL BACKGROUND

The eight named plaintiffs retired from MassMutual between August 1, 1992 and October 1, 1992. On October 23, 1992, Mass-Mutual announced an early retirement incentive program, the Massachusetts Mutual Life Insurance Company Voluntary Termination Program ("the 1992 Plan" or "Severance Plan"). The 1992 Plan was part of a program to reduce MassMutual's home office workforce by seven per cent. The Severance Plan provided three weeks pay for every year of service, up to a maximum of 78 weeks. MassMutual sponsored and administered the 1992 Plan, which is also named as a defendant in this suit. As noted, only employees who retired *on or after* October 23, 1992 and before January 2, 1993 were eligible to receive benefits under this severance package.

Plaintiffs claim that, as early as January, 1992, senior officials at MassMutual knew that rumors of an early retirement incentive package were circulating at the company's home office. Plaintiffs allege that select employees were "tipped off," or informed of the impending Severance Plan prior to October 23, 1992, while the plaintiffs were kept in the dark. Those employees in the know had the opportunity to postpone their retirement until after the Severance Plan was activated and become eligible for additional benefits. Plaintiffs also contend that the seven per cent staff reduction and the formulation of the 1992 plan required considerable lead time and must have been conceived long before October 1, 1992.

Plaintiffs charge that during the first nine months of 1992, MassMutual's top officials said nothing of the impending reduction in force and retirement incentive plan. Instead, management repeatedly asserted that the company was financially strong. During this time period the official company newsletter, the *MassMutual News,* quoted company President Thomas Wheeler and other top executives as stating that no major changes were planned in the way the company was doing business. The *MassMutual News* also carried numerous articles chronicling staff reductions then occurring at other large insurance companies. Early that year, in contrast to the staff reductions at other insurers, MassMutual touted a bonus program for its employees as demonstrating the company's sound financial footing and commitment to its employees.

Plaintiffs aver that, by these statements and actions, MassMutual misrepresented the financial state of affairs of the company, which *was deliberately concealed* until after the Severance Plan was made public on October 23, 1992.

According to the plaintiffs, MassMutual could see the darkening clouds long before October 23. The November and December, 1992 issues of the *MassMutual News* reported on new regulations for the industry being drafted by the National Association of Insurance Commissioners ("NAIC"). As early as 1990, NAIC began drafting stricter regulations for the industry, to be implemented in 1993. These would require Mass Mutual and other insurers to increase their capital assets. Moreover, in the year and half preceding the October, 1992 announcement of early retirement incentives, Standard & Poors, Inc.

and Moody's Investors Service lowered their economic ratings for MassMutual. The plaintiffs argue that these facts demonstrate that the defendants must have begun serious consideration of the new severance plan as early as April 1, 1992.

Plaintiffs offer their individual factual recitations in various versions. Seven of the eight named plaintiffs contend that they made their decision to retire in reliance on the statements carried in the *MassMutual News*, to the effect that the defendant's business would proceed as usual, i.e. without any reduction in force. For plaintiffs James Lemon and June DeVine the only allegations of misrepresentation are with regard to these pronouncements. Plaintiff Patricia Kennedy submits her ERISA claims without any reference to specific misrepresentations by MassMutual. Sigmund Ziemba attended a meeting sponsored by the defendant that was intended to provide MassMutual employees with an in-depth look at the financial issues facing the company. Ziemba avers that he attended to learn if any enhanced severance benefits were under consideration. At that meeting no mention was made of any difficult financial conditions or potential reduction in force. Ziemba retired on October 1, but he had accrued enough vacation time to have stayed on the payroll long after the October 23 eligibility cut-off date.

The four other plaintiffs allege that specific misrepresentations were made to them by MassMutual in response to their inquiries regarding the 1992 Severance Plan. Stanley Rodowicz retired on October 1, 1992, with sixty-three days of vacation remaining. Rodowicz claims he took his vacation time in the form of a lump sum payment in reliance on statements made by Laura Cowles, MassMutual's Director of Employee Benefits. Rodowicz alleges that some time in late August or early September, Cowles told him there would be no new early retirement package. Margaret Stevens and Ann Buck allege that their MassMutual pension advisor or retirement counselor expressly stated that no better retirement plan was being considered by the company. Stevens and Buck both retired on September 1, 1992. Barbara Binsky alleges that prior to her decision to retire, a

senior MassMutual officer said no "golden handshake" would be available to her. Based on this information she retired on August 1, 1992.

## IV. DISCUSSION

### A. ERISA Standing

■ The plaintiffs charge the defendants with two ERISA violations as a result of the defendants' misrepresentations regarding the status of the Severance Plan. Count I alleges a breach of MassMutual's fiduciary duty to the plaintiffs in violation of 29 U.S.C. § 1104 and Count II alleges unlawful discrimination in violation of 29 U.S.C. § 1140.

MassMutual maintains that the plaintiffs were not participants in the 1992 Plan and therefore have no standing to pursue this action. Defendants also contend that the Severance Plan did not exist at the time the plaintiffs retired, nor was such a plan under serious consideration. For that reason, there could be no breach of any fiduciary duty. Defendants further argue that the Severance Plan was totally separate from the plaintiffs' retirement plan and, therefore, the fiduciary duties owed to plaintiffs under that retirement plan did not extend to the 1992 Plan.

"ERISA grants standing to a 'participant' to bring a civil action to enforce his rights under the terms of [an employment or pension benefit] plan or to enforce the provisions of ERISA." *Christopher v. Mobil Oil Corp.*, 950 F.2d 1209, 1220 (5th Cir.1992), *cert. denied* —— U.S. ——, 113 S.Ct. 68, 121 L.Ed.2d 35 (1992); ERISA § 502, 29 U.S.C. § 1132(a)(1)(B). In relevant part, ERISA defines "participant" as:

> any employee or former employee of an employer ... who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer ...

29 U.S.C. § 1002(7).

The plaintiffs' participant status, and consequently their standing to have this court resolve their ERISA claims, is governed by the First Circuit's recent decision on ERISA standing, *Vartanian v. Monsanto Company, et al.*, 14 F.3d 697 (1st Cir.1994). MassMutu-

al contends that *Vartanian* merely states the narrow proposition that participant status in a pension plan, "once acquired, may continue after a lump-sum distribution." Defendants' Supplemental Memorandum at 5. The First Circuit's holding is almost certainly broader. *Vartanian* stands for the proposition that a former employee who

> alleges a decision to retire [is made in reliance] on alleged misrepresentations by his employer amounting to a breach of fiduciary duty, [when] the true facts, are not available to the employee until after the employee has ... [retired]; and further, where the employee shows that in the absence of the employer's breach of fiduciary duty he would have been entitled to greater benefits than those which he received, then his receipt of [retirement benefits] cannot be used to deprive him of "participant" status and hence, standing to sue under ERISA.

*Id.* at 702.

Here, plaintiffs have alleged that they relied on the MassMutual's statements that no early retirement plan was under serious consideration. Plaintiffs did not learn that the Severance Plan was implemented until after they retired. Finally, had MassMutual told them that an early retirement package was under serious consideration, plaintiffs contend that they would have delayed their retirement to take advantage of the enhanced benefits. It is clear that the factual allegations of the complaint fall squarely within the "zone of interests ERISA was intended to protect." *Id.* at 701.

The *Vartanian* decision, as a matter of law, affords plaintiffs standing to bring this action. In reaching the conclusion that Vartanian had standing, the First Circuit relied

> on the fact that Vartanian did not know Monsanto had made misrepresentations to him and therefore, he could not have alleged a breach of fiduciary duty by Monsanto until after he had received payment under the 1986 Plan. To hold otherwise would imply that when an employer breaches its fiduciary duty to an employee under ERISA, the employee would have standing to sue only if the employee finds out all the facts constituting the breach

prior to his receipt of retirement benefits. Such a holding would enable an employer to defeat the employee's right to sue for a breach of fiduciary duty by keeping his breach a well guarded secret until the employee receives his benefits or, by distributing a lump sum and terminating benefits before the employee can file suit.

*Vartanian v. Monsanto*, 14 F.3d at 702. It would be equally unjust here to permit MassMutual to avoid its fiduciary duty, if it could be shown that the employer's misrepresentations regarding its serious consideration of a future benefits plan induced plaintiffs to retire.

For these reasons, plaintiffs have standing to bring this ERISA action in this court.

### B. *Failure to State a Claim*

Even assuming standing, however, four of the plaintiffs, James Lemon, June DeVine, Sigmund Ziemba and Patricia Kennedy, have not alleged sufficient facts to support a claim that MassMutual made any misrepresentations to them regarding the Severance Plan that can be construed as giving rise to a claim for breach of fiduciary duty under § 1132 of ERISA.

■ Lemon and DeVine only allege that MassMutual made false statements in the company newsletter regarding the economic conditions of the company. Even if it is acknowledged that Lemon and DeVine were misled by these alleged misrepresentations, it is very clear that these communications were not "regarding plan administration (for example, eligibility under a plan, the extent of benefits under a plan)" and cannot support a claim resting on a breach of fiduciary duty. *Drennan v. General Motors Corp.*, 977 F.2d 246, 251 (6th Cir.1992) (further citations and quotations omitted).

Ziemba's allegations are similar, except that he alleges the misrepresentations were made at a company meeting and not in the MassMutual News. Ziemba makes no allegations that the meeting he attended was other than a meeting to discuss MassMutual's economic state of affairs.

■ "Under ERISA purely business decisions by an ERISA employer are not governed by section 1104's fiduciary standards." *Berlin v. Michigan Bell Telephone Co.,* 858 F.2d 1154, 1163 (6th Cir.1988). A fiduciary must give complete and accurate information in response to participants' inquiries about benefit plans under serious consideration. *Drennan v. General Motors Corp.* at 251. On the other hand, an employer has no ERISA duty to disclose voluntarily, or even truthfully report on, internal deliberations regarding general business decisions unrelated to their obligations as ERISA plan administrators. *Berlin* at 1163. Such a burden on employers is not supported by decisional law in other circuits and is definitely not contemplated by the First Circuit's holding in *Vartanian.* Based on the pleadings before this court, Lemon, DeVine and Ziemba have not alleged facts that would permit a factfinder to conclude that MassMutual breached a fiduciary duty arising under ERISA.

The shortfalls of Patricia Kennedy's allegations require minimal explanation. She simply does not set forth any specific allegations to the effect that MassMutual communicated to her misrepresentations of any sort.

For these reasons, the claims of plaintiffs Lemon, DeVine, Ziemba and Kennedy will be dismissed, unless within twenty days plaintiffs file an amended complaint offering an adequate factual basis to support their claims.

## C. *Fed.R.Civ.P. 9(b): Lack of Particularity*

Fed.R.Civ.P. 9(b) provides that "[i]n all averments of fraud ..., the circumstances constituting fraud ... shall be stated with particularity." Defendants seek dismissal of the ERISA claims alleging breach of fiduciary duty and discrimination on the grounds that both are predicated on allegations of fraudulent misrepresentation which have not been pled with sufficient particularity to meet the requirements of Rule 9(b).

■ The purposes of the particularity requirement of Rule 9(b) are 1) to enable defendants to prepare meaningful defenses to charges of fraud, 2) to prevent conclusory allegations of fraud from serving as a basis for strike suits and fishing expeditions and, 3) to protect defendants from groundless charges that may damage their reputations. *New England Data Services, Inc. v. Becher,* 829 F.2d 286, 292 (1st Cir.1987); *Framingham Union Hosp., Inc. v. Travelers Ins. Co.,* 721 F.Supp. 1478, 1483 (D.Mass.1989). These factors must be weighed "against the general policy of the federal rules in favor of notice pleading." *Framingham Union Hosp., Inc. v. Travelers Ins. Co.,* 721 F.Supp. at 1483.

■ A review of the complaint confirms that the allegations of misrepresentation by each of the four remaining plaintiffs are sufficiently particular to satisfy Rule 9(b). Each plaintiff has stated the source of the misrepresentation, and all aver that the misrepresentations occurred after the 1992 Plan was under serious consideration and prior to their retirement.

Plaintiffs have sufficiently averred not only the Rule 9(b) requirements of time, place and content of the alleged misrepresentations, but also "circumstances ... from which fraudulent intent can be inferred." *Hayduk v. Lanna,* 775 F.2d 441, 444 (1st Cir.1985). To the degree that plaintiffs' allegations of intentional misrepresentation are true, they are premised on the claim that defendants kept the decision to consider an enhanced severance package secret from its employees. Since the pertinent documents and other information supporting this assertion are "peculiarly within the defendants' control," these facts can only be fleshed out and assessed after "some discovery." *Boston & Maine Corp. v. Town of Hampton,* 987 F.2d 855, 866 (1st Cir.1993) (quoting *New England Data Services, Inc. v. Becher,* 829 F.2d 286, 289–292 (1st Cir.1987).

For these reasons, this court will deny defendants' motion to dismiss Count I, for failure to satisfy Rule 9(b).

■ For similar reasons, the court finds that the facts offered in Count II of the complaint, charging discrimination against plan participants pursuant to § 1140 of ERISA, satisfy Rule 9(b). Plaintiffs state that upon "information and belief, others at MassMutual were informed by other employ-

ees and/or officers not to take early retirement because something special in the way of enhanced retirement benefits would be forthcoming." Complaint, ¶ 28. In a letter to defendant MassMutual appended to the complaint, plaintiffs' counsel notes that more vice-presidents and director level employees retired *after* the offer of the Severance Program than before. Counsel alleges that these individuals may have had "inside information". *See* Complaint, Exhibit C. Also appended to the complaint is a letter from MassMutual's counsel to plaintiffs' attorney, which mentions certain individuals who might have been involved in such an information exchange. *See* Complaint, Exhibit D, at 2. The form in which the information is offered is somewhat shaky, and its substance is concededly thin at this point, but it nonetheless satisfies minimal pleading requirements. *See Boston & Maine Corp.,* 987 F.2d at 866.

Based on the complaint and the appended communications just reviewed, plaintiffs are entitled to go forward with discovery on the § 1140 claim of discrimination and unequal treatment. Defendants' motion at this point will be denied without prejudice and may be renewed as a motion for summary judgment at the close of discovery.

### D. *ERISA Preemption and Plaintiffs' Common Law Claims*

■ Plaintiffs' common law claims are preempted. ERISA supersedes "any and all State laws insofar as they may now or hereafter *relate* to any employee benefit plan ...." *Vartanian v. Monsanto Co.,* 14 F.3d at 700 (quoting Section 514 of ERISA, 29 U.S.C. § 1144(a)). Plaintiffs' common law claims are plainly "connected with" and "refer to" MassMutual's 1992 Plan and, as such relate to an employee benefit plan. *Ingersoll–Rand, Co. v. McClendon,* 498 U.S. 133, 139, 111 S.Ct. 478, 483, 112 L.Ed.2d 474 (1990). Plaintiffs' legal claims are "expressly preempted by ERISA ... [because] in order to prevail [they] must plead, and the court must find, that an ERISA plan exists." *Vartanian* at 700 (quoting *Ingersoll–Rand,* 498 U.S. at 140, 111 S.Ct. at 483). Plaintiffs' common law misrepresentation claims fall squarely within the preemption arena of Sec-

tion 514(a) of ERISA, 29 U.S.C. § 1144(a) and must be dismissed.

### E. *Plaintiffs' Motion to Amend the Complaint*

■ Pursuant to Fed.R.Civ.P. 15(a), plaintiffs have filed a motion to amend their complaint by the addition of thirteen additional counts. The *factual* allegations in plaintiffs' amended complaint are substantially the same as those contained in their prior submission. The court therefore will allow plaintiffs' request to amend Count III to state a claim of equitable estoppel under ERISA, 29 U.S.C. § 1132(a)(3)(B).

In eleven of the remaining twelve counts (Counts IV through XVI) the plaintiffs seek to add claims for fraud and negligent misrepresentation, good faith and fair dealing, promissory and equitable estoppel, each brought pursuant to either federal or state common law. The twelfth and final count of the amended complaint alleges age discrimination under the Massachusetts anti-discrimination statute, Mass.Gen.L. ch. 151B.

This court will deny plaintiffs' request to add any of these twelve counts because, as explained above, the common law claims are preempted. Moreover, plaintiffs' state law age discrimination claim is based on exactly the same factual allegations as their ERISA claims. As such, it indisputably "relates to" a benefit plan and must fall because the broad preemption provision of ERISA makes no distinction between state common law and statutory claims.

### V. *CONCLUSION*

For the foregoing reasons this court hereby ALLOWS defendants' motion to dismiss Count I, the breach of fiduciary duty claims, as to plaintiffs Lemon, DeVine, Ziemba and Kennedy for failure to state a claim unless within twenty days of this memorandum a properly supported amended complaint is offered. With respect to plaintiffs Rodowicz, Binsky, Buck and Stevens, the motion to dismiss Count I is DENIED. Also ALLOWED is defendants' motion to dismiss Count III. However, defendants' motion to dismiss Count II is DENIED.

Plaintiffs' motion to amend the complaint by adding a claim of equitable estoppel under ERISA, Count III of the amended complaint, is ALLOWED. As to all other counts, plaintiffs' motion to amend their complaint is DENIED.

In order to make the pleadings clear, within twenty (20) days of this memorandum plaintiffs will file a renewed motion to amend, with a proposed amended complaint attached containing a count for equitable estoppel under ERISA and such further factual allegations as plaintiffs may wish to offer, if any, regarding plaintiffs Rodowicz, Binsky, Buck and Stevens.